UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DOUGLAS MALCOLM**<br>6402 Stoneywood Circle Northwest<br>Canton, Ohio 44718<br><br>    Plaintiff,<br><br>  v.<br><br>**SETERUS, INC.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>    Defendant. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Douglas Malcolm, by and through counsel, for his Complaint against Seterus, Inc., states:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Douglas Malcolm ("Plaintiff" or "Malcolm") is the owner of real property and improvements located at and commonly known as 6402 Stoneywood Circle Northwest, Canton, Ohio 44718 (the "Home").

2. Malcolm currently maintains the Home as his primary, principal residence, and has so maintained for all times relevant to the allegations of this Complaint.

3. Defendant Seterus, Inc. ("Seterus") is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan"). A copy of the Loan is attached as *Composite Exhibit 1*.

1

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

5. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to Section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

6. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Malcolm maintains the Home as his primary residence within this District, Seterus does business within this District, and the actions giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## INTRODUCTION

8. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9. Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

10. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

11. Seterus is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

12. Seterus is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

13. Malcolm asserts a claim for relief against Seterus for breaches of the specific rules under Regulation X as set forth, *infra*.

14. Malcolm has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

15. Malcolm also asserts claims against Seterus based upon state law promissory estoppel and unjust enrichment.

## FACTUAL BACKGROUND

16. Malcolm purchased the Home as his primary, principal residence on September 10, 2007, and financed the purchase through the Loan. *See Exhibit 1*.

17. Seterus currently services the Loan and has acted in this capacity since acquiring the servicing rights to the Loan on or about September 1, 2016 from non-party Bank of America, N.A.

18. Non-party Federal National Mortgage Association ("FNMA") is the current owner of the Loan. Seterus services the Loan on FNMA's behalf.

19. On August 14, 2017, Seterus generated a Trial Period Plan (the "TPP") offering to modify Malcolm's mortgage payment should Malcolm accept and comply with the TPP. A copy of the TPP is attached as *Exhibit 2*.

20. According to the Loan's servicing notes, on August 23, 2017, Seterus failed to mail the TPP to Malcolm until nine (9) days after Seterus generated it. A copy of the Loan's servicing notes is attached as *Exhibit 3*.

21. FNMA servicing guidelines expressly state:

The servicer must include the first payment due date in the applicable Evaluation Notice, as required in the following table.

| If the servicer mails the Evaluation Notice… | Then the servicer must use… |
| --- | --- |
| on or before the 15th day of a calendar month | the first day of the following month as the first Trial Period Plan payment due date. |
| after the 15th day of a calendar month | the first day of the month after the next month as the first Trial Period Plan payment due date. |

*See* Fannie Mae, *D2-3.2-09: Fannie Mae Flex Modification (06/13/2018)*, https://www.fanniemae.com/content/guide/servicing/d2/3.2/09.html.

22. Since Seterus mailed the TPP on August 23, 2017, which is after the 15th day of a calendar month, FNMA servicing guidelines required Seterus to use "the first day of the month after the next month", or October 1, 2017, as the Trial Period Plan payment due date.

23. The TPP, however, required that Malcolm submit the first TPP payment "as soon as possible, but no later than September 30, 2017." *See Exhibit 2*.

24. The TPP continues, "The trial payment due dates appear in the table below. We encourage you to make the trial payments as of the due date [September

4

1, 2017; October 1, 2017; and November 1, 2017] to remain current on your plan." *See Exhibit 2*.

25. The TPP further instructed, "If you do not respond by August 28, 2017, this offer will be revoked." *See Exhibit 2*.

26. On August 17, 2017, a representative of Seterus spoke on the phone with Malcolm. During this call, Seterus told Malcolm about the TPP and Malcolm stated that he would mail in the first TPP payment. The representative advised Malcolm to set up direct payment instead of mailing a check, because Seterus could not guarantee that it would process a check properly. Malcolm declined to set up direct payment because he had been a victim of identity theft and was not comfortable with that method of payment. *See Exhibit 3*.

27. On August 25, 2017, while on a phone call with a representative of Seterus, Malcolm stated that he accepted the TPP. *See Exhibit 3*.

28. On August 30, 2017, Seterus generated a letter to Malcolm that falsely stated that since Seterus had not heard from Malcolm in the previous fourteen (14) days and did not receive the first TPP payment, the TPP offer had expired. A copy of the August 30, 2017 Letter is attached as *Exhibit 4*.

29. The August 30, 2017 letter was generated a mere seven (7) days after Seterus mailed the TPP to Malcolm.

30. Malcolm mailed his first TPP payment on August 31, 2017 and it was delivered to Seterus on September 4, 2017. A copy of USPS tracking of the first TPP payment is attached as *Exhibit 5*.

5

31. Seterus mailed the August 30, 2017 letter to Malcolm on September 1, 2017. *See Exhibit 3*.

32. On September 21, 2017, in direct contradiction to the August 30, 2017 letter, a representative of Seterus advised Malcolm that he was "currently in a trial period." *See Exhibit 3*.

33. On or about October 1, 2017, Malcolm submitted his second TPP payment. However, Seterus returned the second TPP payment with a letter dated November 8, 2017 explaining, "The terms of your agreement were not met." A copy of the November 8, 2017 Letter is attached as ***Exhibit 6***.

34. In a showing of good faith to comply with the terms of the TPP Malcolm accepted, Malcolm submitted his third TPP payment to Seterus on or about November 1, 2017. However, Seterus returned the third TPP payment with a letter dated November 28, 2017, again stating, "The terms of your agreement were not met." A copy of the November 28, 2017 Letter is attached as ***Exhibit 7***.

35. On or about November 8, 2017, Seterus informed Malcolm that his loan could not be approved for modification. The Loan was not eligible for the Fannie Mae Flex Modification program because, "Due to your failure to pay as agreed on your plan this loan no longer meets our workout criteria." A copy of the November 8, 2017 Letter is attached as ***Exhibit 8***.

36. Since Seterus mailed the TPP on August 23, 2017, the first TPP payment should not have been due until October 1, 2017, pursuant to FNMA guidelines.

37. Accordingly, Malcolm would have qualified for the TPP pursuant to FNMA guidelines.

38. On December 22, 2017, after a phone conversation with a representative of Seterus, Malcolm submitted a Financial Hardship Letter, Borrower Assistance Form, and Earnings Statement to Seterus (the "Seterus Submission"), as advised by the representative. A copy of the Seterus Submission is attached as *Exhibit 9*.

39. On or about December 27, 2017, Seterus mailed a letter to Malcolm stating that his application was complete as of December 22, 2017. A copy of the December 27, 2017 Letter is attached as *Exhibit 10*.

40. On or about December 27, 2017, Seterus informed Malcolm that his loan could not be approved for modification. Seterus stated that the Loan was not eligible for the Repayment, Forbearance, and Cap and Extend Modification programs. A copy of the December 27, 2017 Letter is attached as *Exhibit 11*.

41. On or about January 2, 2018, Seterus informed Malcolm that his loan could not be approved for modification. Seterus stated that the Loan was not eligible for a "Fannie Mae Non Delegated Modification" program because, "The investor was unable to approve your request at this time." A copy of the January 2, 2018 Letter is attached as *Exhibit 12*.

42. On January 15, 2018, a representative of Seterus explained to Malcolm that FNMA declined to approve Malcolm's request for assistance because Seterus claimed that Malcolm failed to perform on the TPP. *See Exhibit 3*.

7

43. On January 30, 2018, FNMA filed a foreclosure complaint in the Court of Common Pleas for Stark County, Ohio. A copy of the Foreclosure Complaint is attached as *Exhibit 13*.

44. On or about March 7, 2018, Seterus informed Malcolm that his loan could not be approved for modification. Seterus stated that *on December 29, 2017* they determined, pursuant to their review of Malcolm's loss mitigation application, the Loan was not eligible for a Fannie Mae Flex Modification program because, "You have previously defaulted on another foreclosure alternative and therefore are not eligible for the modification program." Seterus did not send any prior notice of this eligibility determination. A copy of the March 7, 2018 Letter is attached as *Exhibit 14*.

45. Seterus made the decision referenced in the March 7, 2018 letter on December 29, 2017, and the decisions was reviewed by FNMA on January 2, 2018. *See Exhibit 3*.

46. Seterus failed to properly service the Loan which has directly and proximately caused the following damages to Malcolm:

    (a) Malcolm incurred attorneys' fees in defending against the improper Foreclosure Case which remains in litigation as of the date of this Complaint;

    (b) Malcolm incurred attorneys' fees and postage costs in the preparation and mailing of requests for information;

(c) Malcolm hoped and believed that he could secure the opportunity to begin the long process of rehabilitating his credit standing, but Seterus has prohibited Malcolm of such an opportunity by refusing to participate in the loss mitigation process in good faith;

(d) Seterus's conduct has caused Malcolm to suffer great emotional distress driven by the fear that he might lose the Home and be forced to leave the Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

47. Throughout this entire ordeal, Malcolm simply wanted to enter into a loan modification, avoid foreclosure, begin rehabilitating his credit, and most importantly, remain in the Home.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SETERUS

48. Seterus's actions are part of a pattern and practice of behavior in violation of Malcolm's rights and in abdication and contravention of Seterus's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

49. At the time of the filing of this Complaint, Seterus has had more than One Thousand, Four Hundred Ninety Six (1,496) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related

9

to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

50. Malcolm has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Seterus against other borrowers. In particular, Malcolm has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Group Exhibit 15*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Seterus has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: PROMISSORY ESTOPPEL

51. Malcolm restates and incorporates all of his statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

52. The doctrine of promissory estoppel requires (1) a clear and unambiguous promise; (2) reliance on the promise by the party to whom the promise is made; (3) that the reliance was reasonable and foreseeable; and (4) injury from the reliance.

53. Seterus promised Malcolm through the TPP offer that if Malcolm timely submitted his September 2017, October 2017, and November 2017 TPP payments, Seterus would extend Malcolm a permanent loan modification. *See Exhibit 2*.

10

54. As the TPP offer would put Malcolm on a path to saving his home, Seterus should have expected that Malcolm would rely on the promise of the permanent modification.

55. Malcolm reasonably and in good faith relied on said promise in such a manner as to change his position for the worse as Seterus kept the August 2017 payment and caused FNMA to submit documentation necessary to file the instant matter against Malcolm.

56. Malcolm was harmed by his reliance on the TPP by making payments thereunder without obtaining the permanent modification in exchange for his performance and payment.

57. It was unconscionable for Seterus to mail the TPP on August 23, 2017, five days before the acceptance date of August 28, 2017, when Seterus generated the TPP on August 14, 2018. *See Exhibit 3*.

58. It was unconscionable for Seterus to mail the TPP after the 15th day in August and fail to change the first TPP payment due date to October 1, 2017, pursuant to FNMA guidelines.

59. It was unconscionable for Seterus to send the August 30, 2017 letter claiming that the TPP had expired because Seterus did not hear from Malcolm, when in fact Malcolm accepted the TPP through two separate telephone conversations with Seterus. *See Exhibit 4 and Exhibit 3*.

60. It was unconscionable for Seterus to state that the first TPP payment was due "as soon as possible, but no later than September 30, 2017," receive

Malcolm's first TPP payment on September 4, 2017, advise Malcolm on September 21, 2017 that he was "currently in a trial period," and deny Malcolm for a loan modification for "failure to pay as agreed." *See Exhibit 2, Exhibit 5, Exhibit 3, and Exhibit 8.*

61. It was unconscionable for Seterus to return Malcolm's second TPP payment and state the reason why as "the terms of [the TPP] were not met." *See Exhibit 6.*

62. It was unconscionable for Seterus to return Malcolm's third TPP payment and state the reason why as "the terms of [the TPP] were not met." *See Exhibit 7.*

63. It was unconscionable for Seterus to deny Malcolm's December 22, 2017 request for assistance because of Seterus's unilateral rejection of the TPP. *See Exhibit 14.*

64. Seterus should be precluded from asserting rights against Malcolm which might have otherwise existed at law and in equity.

## COUNT TWO: UNJUST ENRICHMENT

65. Malcolm restates and incorporates all of his statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

66. Malcolm conferred a benefit, the first TPP payment, on Seterus, who has knowledge of that benefit.

12

67. Seterus voluntarily accepted and retained the benefit conferred, even though it previously revoked the TPP offer.

68. The circumstances render Seterus's retention of the benefit inequitable unless Seterus pays to Malcolm the value of the benefit.

69. Seterus has been unjustly enriched at the expense of Malcolm.

70. Malcolm is entitled to damages as a result of Seterus's unjust enrichment, including disgorgement of all monies unlawfully accepted by Seterus from Malcolm.

## COUNT THREE: VIOLATION OF 12 C.F.R. § 1024.41(c)

### (Failure to Review a Complete Application within Thirty (30) Days)

71. Malcolm restates and incorporates all of his statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

72. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

73. 12 C.F.R. § 1024.41(c)(1) provides:

[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:

(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation

        options, if any, it will offer to the borrower on behalf of
the owner or assignee of the mortgage.

74. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

75. The Loan was not scheduled for a foreclosure sale at the time Malcolm's application was complete as FNMA did not file the Foreclosure Case until after Malcolm submitted his complete loss mitigation application.

76. Seterus received the Seterus Submission application on or around December 22, 2017. *See Exhibit 9*.

77. Seterus, through the December 27, 2017 letter, deemed Malcolm's loss mitigation application to be complete. *See Exhibit 10*.

78. As of December 27, 2017, Seterus was in possession of a complete loss mitigation application, by and through their receipt of the Seterus Submission, and therefore was obligated to notify Malcolm of its determination of which loss mitigation options, if any, it would offer to Malcolm accordance with the requirements of 12 C.F.R. § 1024.41(c)(1) within thirty (30) days of December 22, 2017, that is, on or before January 21, 2018.

79. As evidenced by the March 7, 2018 letter, Seterus did not notify Malcolm of his eligibility for a Fannie Mae Flex Modification pursuant to

their review of the December 22, 2017 application until sending such letter to Malcolm. *See Exhibit 14.*

80. Seterus's failure to notify Malcolm of his eligibility for a Fannie Mae Flex Modification until March 7, 2018, significantly more than thirty (30) days after receiving a complete loss mitigation application, constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

81. Seterus's actions caused Malcolm damages, most notably that Malcolm's credit record has been tarnished by the improper filing of the Foreclosure Case resulting in significant, lasting harm, yet also including the attorneys' fees incurred in defending the Foreclosure Case, the time spent preparing the requests for information, the postage cost of mailing the requests for information, and emotional distress.

82. Seterus's actions are part of a pattern and practice of behavior in conscious disregard for Malcolm's rights.

83. As a result of Seterus's actions, Seterus is liable to Malcolm for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT FOUR: VIOLATION OF 12 C.F.R. § 1024.41(f)

**(Violation of Prohibition on a Foreclosure Referral with a Complete Loss Mitigation Application Pending a Full Review)**

84. Malcolm restates and incorporates all of his statements and allegations contained in paragraphs 1 through 50, in their entirety, as if fully rewritten herein.

85. 12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))."

86. 12 C.F.R. § 1024.41(b)(2) provides that if a servicer receives a loss mitigation application forty-five (45) days or more before a foreclosure sale that the servicer must promptly review the application to determine whether the application is complete and notify the borrower in writing within five (5) days, excluding public holidays, Saturdays, and Sundays, whether the application is complete.

87. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(b)(3) provides that "[i]f no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

88. 12 C.F.R. § 1024.41(f)(2) states:

> If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> i. The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

  ii. The borrower rejects all loss mitigation options offered by the servicer; or

  iii. The borrower fails to perform under an agreement on a loss mitigation option.

89. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(f) provides that:

> Section 1024.41(f) prohibits a servicer from making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process under certain circumstances. Whether a document is considered the first notice or filing is determined on the basis of foreclosure procedure under the applicable State law.
>
>  i. Where foreclosure procedure requires a court action or proceeding, a document is considered the first notice or filing if it is the earliest document required to be filed with a court or other judicial body to commence the action or proceeding (e.g., a complaint, petition, order to docket, or notice of hearing).

90. Seterus received the Seterus Submission on or around December 22, 2017. *See Exhibit 9.*

91. On or about December 27, 2017, Seterus sent written notice pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B) specifically stating that Malcolm's loss mitigation application was complete. *See Exhibit 10.*

92. Seterus did not send Malcolm notice of his eligibility, or lack thereof, for any and all loss mitigation options available to him until on or about March 7, 2018, when Seterus sent the letter informing Malcolm that his loan was not approved for a Fannie Mae Flex Modification. *See Exhibit 14.*

93. However, over a month earlier on January 30, 2018, FNMA filed the Foreclosure Case, even though Seterus had not sent Malcolm the proper written notice (notices in this case since Seterus sent denial letters in a piecemeal manner) pursuant to 12 C.F.R. § 1024.41(c)(1)(ii) stating that Malcolm is not eligible for **any** loss mitigation option. *See Exhibit 13*.

94. The March 7, 2018 letter proves that Seterus did not inform Malcolm of his eligibility for a Fannie Mae Flex Modification until after the Foreclosure Case was filed. *See Exhibit 14*.

95. Seterus's actions, in causing FNMA to submit documentation necessary to file the Foreclosure Case against Malcolm even though Seterus had not informed Malcolm that he was not eligible for **any** loss mitigation option, constitutes a clear, separate, and distinct violation of 12 CFR § 1024.41(f).

96. Seterus's actions caused Malcolm damages, most notably that Malcolm's credit record has been tarnished by the improper filing of the Foreclosure Case resulting in significant, lasting harm, yet also including the attorneys' fees incurred in defending the Foreclosure Case, the time spent preparing the requests for information, the postage cost of mailing the requests for information, and emotional distress.

97. Seterus's actions are part of a pattern and practice of behavior in conscious disregard for Malcolm's rights.

98. As a result of Seterus's actions, Seterus is liable to Malcolm for actual damages, statutory damages, costs, and attorneys' fees.

18

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Douglas Malcolm prays for the entry of judgment in his favor and against Defendant Seterus, Inc., as follows:

A. An order directing Seterus to disgorge the first TPP payment;

B. A finding that Seterus violated 12 C.F.R. § 1024.41(c);

C. A finding that Seterus violated 12 C.F.R. § 1024.41(f);

D. Awarding Malcolm actual damages in an amount to be determined at trial;

E. Awarding Malcolm statutory damages in an amount to be determined at trial;

F. Awarding Malcolm costs and reasonable attorneys' fees; and

G. Granting such other and further relief as is just and proper.

Respectfully submitted:

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
William C. Behrens (0093031)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Douglas Malcolm*

## JURY DEMAND

Malcolm hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
William C. Behrens (0093031)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
Dann Law
*Counsel for Plaintiff Douglas Malcolm*