# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **DOUGLAS MALCOLM,** | CASE NO. 5:18-CV-01937 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **SETERUS, INC.,** | |
| | **MEMORANDUM OF OPINION AND** |
| **Defendant.** | **ORDER** |

This matter comes before the Court upon the Motion for Summary Judgment of Defendant Seterus, Inc. ("Seterus"). (Doc. No. 31.) Plaintiff Douglas Malcolm ("Malcolm") filed a brief in opposition on July 29, 2019, as well as an amended opposition on August 2, 2019, to which Seterus replied on August 12, 2019. (Doc. Nos. 34, 37, 38.) For the following reasons, Seterus's Motion for Summary Judgment (Doc. No. 31) is GRANTED.

**I. Background**

    **a. Factual Background**

On September 10, 2007, in order to finance the purchase of property located at 6402 Stoneywood Circle NW, Canton, Ohio 44718, Malcolm executed a Note and Mortgage (collectively, the "Loan"). (Doc. No. 1-1.) At all times relevant to the instant matter, Federal National Mortgage Association ("Fannie Mae") was the owner of the Loan, and Seterus was the servicer of the Loan. (*Id.* at 22; Doc. No. 1 at ¶¶ 3, 17-18.)

In the 2016 to 2017 timeframe, Malcolm became delinquent on his Loan payments. (Doc. No. 31-1 at 20:15-18.) At his deposition, Malcolm testified that he fell behind on his payments due to some medical expenses and the fact that his expenses in general exceeded his income. (*Id.* at

20:19-25.) Malcolm admitted that nothing Seterus did caused this initial delinquency. (*Id.* at 21:13-17.) In August 2017, in response to Malcolm's default, Seterus issued him a letter captioned "Trial Period Plan for Flex Modification Offer" regarding a potential Loan modification (the "TPP"). (Doc. No. 1-2.) Under the TPP, Malcolm was required to make three payments in order to qualify for a permanent loan modification. (*Id.* at 4.) The first payment was due by September 30, 2017, and the next two payments were due by the last day of the month in October 2017 and November 2017, respectively. (*Id.*) The TPP also provided in bold that "**[Seterus] must receive each payment in the month in which it is due. If you miss a payment or do not fulfill any other terms of your Trial Period Plan, this offer will end, and your mortgage loan will not be modified.**" (*Id.*)

During a phone call with a Seterus representative on August 25, 2017, Malcolm accepted the TPP and subsequently timely submitted his first payment. (Doc. No. 1 at ¶ 27; Doc. No. 1-3 at 2; Doc. No. 1-5.) However, he then failed to make the second payment by the end of October 2017. Specifically, Malcolm testified that he placed the check in the mail room at his place of employment sometime in October 2017, but that there was a delay, and it was not actually postmarked and mailed until October 31, 2017. (Doc. No. 31-1 at 48:3-10, 51:3-6, 52:16-53:4, 54:7-19.) As such, Seterus did not receive the check by the October 31, 2017 deadline prescribed by the TPP for the second payment. (*See id.* at 49:1-8.) Because the terms of the TPP were not met, Seterus returned Malcolm's second payment, along with his third attempted payment. (Doc. Nos. 1-6, 1-7.) On November 8, 2017, Seterus also issued Malcolm a letter informing him that his Loan was not approved for the Fannie Mae Flex Modification due to his failure to pay as agreed under the TPP. (Doc. No. 1-8.)

Subsequently, on December 22, 2017, Malcolm submitted a loss mitigation application (the "Application") at the direction of a Seterus representative. (Doc. No. 1-9.) Shortly thereafter, Seterus

mailed a letter to Malcolm stating that the Application was complete as of December 22, 2017. (Doc. No. 1-10.) In letters dated December 27, 2017 and January 2, 2018, in response to Malcolm's Application, Seterus informed him that the Loan was not eligible for the following programs: (1) Repayment, (2) Forbearance, (3) Cap and Extend Modification, and (4) Fannie Mae Non-Delegated Modification. (Doc. Nos. 1-11, 1-12.) Neither letter addressed Malcolm's eligibility for the Fannie Mae Flex Modification program for which he had been previously denied due to his failure to abide by the payment terms of the TPP.

On January 30, 2018, due to Malcolm's continued default under the Loan, Fannie Mae filed a foreclosure action in the Court of Common Pleas of Stark County, Ohio. (Doc. No. 1-13.) In a letter dated March 7, 2018, while the foreclosure case was pending, Seterus again informed Malcolm that his Loan was not eligible for the Fannie Mae Flex Modification because he "previously defaulted on another foreclosure alternative"—i.e., the TPP. (Doc. No. 1-14.) The letter was in response to Malcolm's Application in December 2017 and indicated that this more recent decision on his eligibility for the Fannie Mae Flex Modification had been made on December 29, 2017. (*Id.*)

In November 2018, Seterus offered Malcolm another trial period plan, this time for a Fannie Mae Non-Delegated Modification. (Doc. No. 37-2 at ¶ 9, Ex. E.) According to Seterus, Malcolm's Loan was approved for this modification. (Doc. No. 31 at 8.) In June 2019, the foreclosure action against Malcolm was dismissed. (Doc. No. 31-2 at ¶ 6, Ex. 2-B.)

   b. **Procedural History**

On August 23, 2018, Malcolm filed the current action against Seterus. (Doc. No. 1.) In his Complaint, Malcolm set forth claims for promissory estoppel, unjust enrichment, and violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"). (*Id.* at ¶¶ 51-98.)

3

Specifically, with respect to his RESPA claims, Malcolm seeks to enforce certain provisions of the Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act ("Regulation X"). (*Id.* at ¶ 5.)

On June 28, 2019, Seterus moved for summary judgment with respect to all of Malcolm's claims. (Doc. No. 31.) Malcolm filed a brief in opposition to Seterus's Motion for Summary Judgment on July 29, 2019, and subsequently filed an amended opposition on August 2, 2019, to which Seterus replied on August 12, 2019. (Doc. Nos. 34, 37, 38.) In his opposition brief, Malcolm withdrew his claims for promissory estoppel and unjust enrichment. (Doc. No. 37 at 3.) As a result, the only remaining claims in dispute are Malcolm's claims under RESPA.

## II. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). In addition, "the moving party bears the initial burden of showing that there

4

is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09. "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

**III. Analysis**

"RESPA is a consumer protection statute that regulates the real estate settlement process." *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17 CV 1473, 2019 WL 1877174, at *5 (N.D. Ohio Apr. 26, 2019) (quoting *James v. Ocwen Loan Servicing, LLC*, No. 1:17-CV-0501, 2017 WL 6336760, at *4 (S.D. Ohio Dec. 12, 2017), *report and recommendation adopted*, 2018 WL 1173035 (S.D. Ohio Mar. 6, 2018)). Congress enacted RESPA to ensure "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). "Although

5

the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012)). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Id.*

In this case, Malcolm asserts that Seterus violated two RESPA regulations—12 C.F.R. § 1024.41(c)(1), which sets forth requirements related to the timely review of a complete loss mitigation application, and 12 C.F.R. § 1024.41(f)(2), which generally prohibits filing for foreclosure if a complete loss mitigation application is pending. (Doc. No. 37 at 4.) Specifically, Malcolm claims that his Application in December 2017 was a complete loss mitigation application and that Seterus (1) failed to timely respond to his Application because Seterus's March 7, 2018 letter was sent more than 30 days after his Application; and (2) improperly filed for foreclosure in January 2018 while his Application was still pending, as Seterus did not fully respond to his Application until it issued the March 7, 2018 letter. (*Id.* at 4-9.)

Before addressing these regulations in more detail, the Court notes that Seterus argues that it was not required to abide by the requirements set forth in § 1024.41 with regard to Malcolm's Application in December 2017 because the Application was a duplicative request. (Doc. No. 38 at 4-7.) "RESPA requires loan servicers to consider 'a single complete loss mitigation application,' and does not extend this obligation to successive or duplicative requests." *Lohman v. Beneficial Fin. I, Inc.*, No. 1:17cv342, 2018 WL 1562021, at *3 (S.D. Ohio Mar. 30, 2018) (quoting *Brimm v. Wells Fargo Bank, N.A.*, 688 F. App'x 329, 331 (6th Cir. 2017)); 12 C.F.R. § 1024.41(i) ("A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the

6

servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application."). The Court need not decide this issue, however, as the Court finds that Malcolm's claims fail regardless of whether his Application in December 2017 was a duplicative request. For purposes of ruling on Seterus's Motion for Summary Judgment, the Court will assume Malcolm's Application was his first complete loss mitigation application and will assess the merits of his claims under §§ 1024.41(c)(1) and (f)(2).

### a. 12 C.F.R. § 1024.41(f)

Section 1024.41(f)(2) generally prohibits a servicer from filing for foreclosure after a borrower has submitted a "complete loss mitigation application," unless:

> (i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii) The borrower rejects all loss mitigation options offered by the servicer; or
>
> *(iii) The borrower fails to perform under an agreement on a loss mitigation option*.

12 C.F.R. § 1024.41(f)(2) (emphasis added).

Malcolm contends Seterus violated this provision because he submitted his Application—a complete loss mitigation application—in December 2017, and Seterus filed for foreclosure in January 2018 without having first satisfied any of the exceptions enumerated above. (Doc. No. 37 at 7-8.) In response, Seterus claims the foreclosure action was permitted because Malcolm previously failed to perform under the TPP, and the exception provided for in § 1024.41(f)(2)(iii) applies. (Doc. No. 38 at 10-13.) Malcolm disputes this interpretation of the third exception, and asserts that his previous

7

default under the TPP is irrelevant. (Doc. No. 37 at 7-8.) According to Malcolm, the exception would only apply if Malcolm had failed to perform under an agreement on a loss mitigation option that Seterus offered in response to his December 2017 Application. (*Id.*) The Court disagrees and finds that the filing of the foreclosure action did not violate § 1024.41(f)(2).

In this case, Malcolm accepted Seterus's offer of the TPP related to the Fannie Mae Flex Modification and subsequently failed to perform under the terms of the TPP, which was an agreement on a loss mitigation option. *See Rupli v. Ocwen Loan Servicing, LLC*, No. DKC 16-0181, 2016 U.S. Dist. LEXIS 102262, at *17 (D. Md. Aug. 4, 2016) ("Here, Defendant offered the TPP - a loan mitigation option - to Plaintiff by letter on August 25."); 12 C.F.R. § 1024.31 ("Loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower."). Accordingly, Malcolm failed to perform under an agreement on a loss mitigation option before the foreclosure action was filed, and the foreclosure filing was therefore permitted based on the third exception listed in § 1024.41(f)(2). *See* 12 C.F.R. § 1024.41(f)(2)(iii) ("The borrower fails to perform under an agreement on a loss mitigation option.").

Additional support for this Court's conclusion that the exception set forth in § 1024.41(f)(2)(iii) applies regardless of the fact that Malcolm's failure to perform under the TPP occurred prior to his December 2017 Application is found in a line of cases where the majority of courts interpreting identical language set forth in § 1024.41(g)(3)[1] have held that this exception applies when the borrower previously failed to perform under an agreement on a loss mitigation

---

[1] *See* 12 C.F.R. § 1024.41(g) ("If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process . . . a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless . . . *(3) The borrower fails to perform under an agreement on a loss mitigation option.*") (emphasis added).

option regardless of whether the borrower had subsequently submitted a more recent loss mitigation application. *See Martia v. Specialized Loan Servicing, LLC*, No. CV 18-8875-MWF (PLAx), 2019 WL 2870879, at *10 (C.D. Cal. Feb. 28, 2019) ("In light of Plaintiff's default on his previous loan modification in 2013, the Court is unpersuaded by Plaintiff's sole argument that Defendants should be required to follow the requirements of section 1024.41 again because Defendants allowed Plaintiff to submit a subsequent application."); *Son v. Wells Fargo Bank, N.A.*, No. 1:18-CV-488-RP, 2019 WL 317251, at *3 (W.D. Tex. Jan. 24, 2019) ("Son's own allegations admit that she defaulted on her first loss mitigation option. . . . That admission alone suffices to nullify Wells Fargo's obligation to comply with Section 1024.41(g)."); *Edge-Wilson v. Wells Fargo Bank, N.A.*, No. 18-cv-03302-PJH, 2018 WL 6438359, at *2 (N.D. Cal. Dec. 7, 2018) (holding "the plain language of § 1024.41(g) forecloses plaintiff's RESPA claim" because of the plaintiff's earlier failure to perform on a loan modification); *Cuellar v. Selene Fin. LP*, No. 4:17-CV-00729-ALM-CAN, 2018 U.S. Dist. LEXIS 164339, at *12 (E.D. Tex. Aug. 31, 2018) ("It is undisputed that Plaintiff defaulted on the loan modification agreement in January 2017. As such, Plaintiff has failed to perform under the loss mitigation option and cannot seek relief under 12 C.F.R. § 1024.41(g)(3).").

Malcolm cites one case in support of his argument that came to the opposition conclusion, again interpreting 12 C.F.R. § 1024.41(g)(3). (Doc. No. 37 at 8.) In *Dionne v. Fed. Nat'l Mortg. Ass'n*, the court held: "Section 1024.41(g)(3) allows a servicer to foreclose if, after receipt of a complete loss mitigation application, the servicer offers the borrower a loss mitigation option, the borrower agrees to the option, and the borrower <u>subsequently</u> fails to perform. That section cannot plausibly be read to eliminate the protections of § 1024.41(g) if a borrower had previously received and failed to perform under a loss mitigation application." No. 15–cv–56–LM, 2016 WL 6892465,

9

at *10 (D.N.H. Nov. 21, 2016). The court in *Dionne* did not cite any authority in support of its interpretation of the regulation, however, and the Court does not find it persuasive in light of the plain language of the statute and the holdings of the majority of other district courts.

Accordingly, Malcolm's failure to perform under the TPP forecloses his claim under § 1024.41(f)(2), and summary judgment in favor of Seterus on this claim is warranted.

### b. 12 C.F.R. § 1024.41(c)

Section 1024.41(c)(1) provides:

[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

. . .

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. . . .

Malcolm asserts Seterus violated this regulation by failing to provide him the March 7, 2018 letter informing him that he was not eligible for the Fannie Mae Flex Modification within 30 days of his December 22, 2017 Application. (Doc. No. 37 at 5.) Seterus disputes this for a variety of reasons and contends its actions did not violate any regulations. (Doc. No. 31 at 13-14; Doc. No. 38 at 7-10.) The Court need not address the parties' arguments in this regard, however, as even assuming that Seterus violated § 1024.41(c)(1)(ii), Malcolm has not provided any evidence that this violation caused him any damages.

A borrower may enforce the provisions of § 1024.41 "pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a). In turn, § 2605(f) permits a borrower to recover (1) "any actual damages to the borrower as a result of the failure" to comply, and (2) statutory damages of up

10

to $2,000 "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1). In this case, even assuming a violation of § 1024.41(c)(1)(ii), Malcolm has not presented sufficient evidence to establish either actual or statutory damages.

In general, "district courts should construe actual damages broadly." *Pope v. Carrington Mortg. Services, LLC*, No. 1:18–CV–240, 2018 WL 2933857, at *4 (N.D. Ohio June 12, 2018). "The damages alleged must, however, be damages suffered '*as a result of the failure*' to satisfy a RESPA duty." *Anderson v. Barclays Capital Real Estate, Inc.*, No. 3:09CV2335, 2010 WL 2541807, at *6 (N.D. Ohio June 18, 2010) (quoting 12 U.S.C. § 2605(f)(1)(A)); *see also Pike v. Bank of Am., N.A.*, No. 1:14 CV 2529, 2016 WL 614013, at *6 (N.D. Ohio Feb. 16, 2016) ("A plaintiff must plead actual damages as well as a causal link between the alleged RESPA violation and the plaintiff's injuries to recover for a violation of § 2605.").

Here, Malcolm asserts he suffered a variety of actual damages, but there is no evidence that the alleged damages are causally related to Seterus' purported failure to timely respond to his Application. First, Malcolm claims he incurred attorneys' fees and costs in defending against the foreclosure action filed against him. (Doc. No. 37 at 10-11.) Malcolm asserts that the filing of the foreclosure action violated § 1024.41(f)(2), and therefore Seterus's violations caused him to incur costs defending against an improper foreclosure suit. (*Id.* at 11.) But the Court has already concluded that the filing of the foreclosure action was not a violation of § 1024.41(f)(2). Instead, Malcolm must show that his claimed damages are connected to Seterus's alleged violation of § 1024.41(c)(1)(ii)— failure to issue the March 7, 2018 letter within 30 days of his Application. There is no evidence, however, that had Seterus issued its letter earlier, Malcolm would have been able to avoid foreclosure and the defense costs he incurred as a result. Indeed, the March 7, 2018 letter informed Malcolm for

11

the second time that he was not eligible for the Fannie Mae Flex Modification, and its timing seemingly would have no effect on Malcolm's ability to prevent foreclosure, as Malcolm does not contend that the actual denial of the loan modification was improper. Moreover, Malcolm admitted he defaulted under the Loan due to his inability to pay well before Seterus's alleged violation of § 1024.41(c)(1)(ii). *See Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) ("We conclude that there is no genuine dispute that, by virtue of Houston's continued nonpayment of undisputed debts, U.S. Bank's RESPA violation did not result in her foreclosure."). Thus, Malcolm has not demonstrated a causal connection between Seterus's alleged violation and the costs of defending against the foreclosure action.

Next, Malcolm claims he is entitled to actual damages for the attorneys' fees and costs he incurred related to sending several requests for information to Seterus and related to submitting another loss mitigation application in July 2018. (Doc. No. 37 at 10-11.) Again, Malcolm does not provide any reasoning as to why these costs were caused by Seterus's failure to issue the March 7, 2018 letter within 30 days of his Application, and there is no evidence that Malcolm would not have incurred these costs if Seterus had timely responded to his December 2017 Application. Finally, Malcolm asserts his credit has been severely damaged, and Seterus's actions have delayed his ability to begin rehabilitating his credit standing. (*Id.*) But he once more fails to show how Seterus's purported violation contributed to this delay. As such, Malcolm has failed to establish a genuine issue of material fact with respect to whether he suffered any actual damages as a result of Seterus's alleged violation.

Further, Malcolm cannot prove he is entitled to statutory damages, which are only available "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(B). "To show a

pattern or practice, a plaintiff must show that noncompliance with the statute 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Necak*, 2019 WL 1877174, at *6 (quoting *Lewis v PNC Pank, N.A.*, No. 3:17 CV 220, 2018 WL 6249989, at *8 (S.D. Ohio Nov. 29, 2018)). "To establish a pattern or practice of noncompliance, 'one or two violations alone are insufficient.'" *Schoen v. Bank of Am., N.A.*, No. 2:17-CV-648, 2019 WL 590882, at *10 (S.D. Ohio Feb. 13, 2019) (citation omitted).

Because the Court has found that Seterus did not violate § 1024.41(f)(2), at most, Malcolm can establish a single violation of § 1024.41(c)(1)(ii), which is insufficient to establish a pattern or practice of noncompliance by itself. Malcolm sets forth several arguments in an attempt to further support his claim for statutory damages, but the Court finds them unavailing. First, Malcolm points to deposition testimony from Seterus's corporate representative regarding Seterus's lack of communication with Fannie Mae with regard to certain aspects of the TPP. (Doc. No. 37 at 12-13.) He also asserts Seterus regularly mailed loss mitigation correspondence to Malcolm in predated letters. (*Id.* at 13.) While Malcolm claims this behavior is improper, he does not contend that any of it violated RESPA. Accordingly, it is not relevant to the Court's assessment of whether Seterus has exhibited a pattern or practice of noncompliance with RESPA requirements.

Malcolm also identifies two other lawsuits filed against Seterus, which allege Seterus engaged in RESPA violations similar to those at issue in this case. (*Id.* at 13-14.) However, in the first case cited by Malcolm, *Walker v. Seterus, Inc.*, the court granted summary judgment in favor of Seterus on the plaintiff's RESPA claim. No. 17 C 7194, 2019 WL 3287892, at *3 (N.D. Ill. July 21, 2019). The second case that Malcolm cites appears to have been dismissed with prejudice based on a settlement by the parties. *See* Stipulation of Dismissal with Prejudice, *Balest v. Seterus, Inc.*, No.

4:18-cv-02540 (N.D. Ohio Sept. 11, 2019), ECF No. 34.  Thus, neither case found that Seterus violated RESPA, and the RESPA claims in both cases have been dismissed.  Consequently, the Court finds neither case supports a finding that Seterus engaged in a pattern or practice of noncompliance with RESPA, and, as a result, Malcolm has failed to present sufficient evidence to support his claim for statutory damages.

Because Malcolm has not submitted sufficient evidence to establish either actual or statutory damages with respect to his claim that Seterus violated § 1024.41(c)(1)(ii), summary judgment in Seterus's favor on this claim is appropriate.

## IV. Conclusion

For the reasons set forth above, Seterus's Motion for Summary Judgment (Doc. No. 31) is GRANTED.

**IT IS SO ORDERED.**

      *s/Pamela A. Barker*
      PAMELA A. BARKER
Date:  March 24, 2020      U. S. DISTRICT JUDGE